UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYCE WAYNE NICHOLES,<br><br>Petitioner,<br><br>v.<br><br>STATE OF CALIFORNIA,<br><br>Respondent. | No. 2:16-cv-02643-MCE-AC<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the petition filed on November 7, 2016, ECF No. 1, which presents two claims challenging petitioner's 2014 conviction and sentence for attempted voluntary manslaughter and assault with a firearm. Respondent State of California filed an answer, ECF No. 20, and petitioner did not file a traverse.

I. BACKGROUND

A. Trial

The prosecution presented the following evidence at trial.

Petitioner and at least one other individual, Eric Baca ("Baca") were arguing outside Big John's Bar and Grill in Yuba City, California in the early morning hours of January 29, 2012. As summarized by the Court of Appeal,

////

1

> The prosecution's theory and evidence presented at trial was that during the argument, [petitioner] moved to his truck, then fired his gun into the air, and then fired again at a crowd of people, including Baca. [Petitioner] then shot Michael Ybarra [("Ybarra")] while [petitioner] was driving his truck and Ybarra was running away.
>
> It is undisputed that Baca incurred a nonfatal gunshot wound to his chest and Ybarra was struck by bullets in the arm and foot.

Lodged Doc. 6 at 4.[1]

Jamie Harville ("Harville") was at Big John's Bar and Grill from the evening of January 28, 2012 into the early morning hours of January 29, 2012. RT 96.[2] Harville testified that she witnessed an altercation between at least two men in front of the establishment. RT 100–01. At one point during the altercation one of the men started going backwards and pulled out a gun. RT 101–02. The person with the gun shot into the air first and fired at least a couple times. RT 103. The man then aimed the gun towards the bar and Harville was pulled inside by one of the bar's bouncers. RT 103. Detective Scotty Clinkenbeard ("Clinkenbeard") of the Yuba City Police Department testified that he interviewed Harville on February 8, 2012. RT 129. During the interview, Harville said that one man took off his shirt and he was also the man who got shot. RT 131. The man who did the shooting was walking backwards in the parking lot as the other man was walking towards him. RT 132. According to Clinkenbeard's notes, Harville said that the man with his shirt on was kind of jogging backwards and then fired two to three shots in the air while running towards a light-colored Ford pickup truck. RT 132. The man stopped, stood next to the truck, and then pointed his gun towards everybody, including the man without a shirt on, and fired several more times. RT 132.

Araceli Rodriguez ("Rodriguez") was a patron at the Big John's Bar and Grill the night of the shooting and was outside with her friend at the time of the incident. RT 243–44. Rodriguez testified that she witnessed two men exchanging comments outside approximately six feet away from her. RT 247, 248. She recalled that one of the men took his shirt off and came towards the

---

[1] The undersigned has independently reviewed the trial record and confirms the accuracy of the state court's summary quoted herein.
[2] "RT" refers to Reporter's Transcript on Appeal.

other man. RT 248. Rodriguez witnessed one man with his shirt on pointing a gun and then heard the gun being shot up in the air. RT 249–50. The argument she witnessed was just verbal, in other words did not involve punches or any physical altercation. RT 253. Detective Nicholas Morawcznski ("Morawcznski") interviewed Rodriguez a couple days after the incident, on January 31, 2012. RT 287. Morawcznski read his notes from that interview, which included the following observations:

> Rodriguez saw an additional male (later identified as Eric Baca) take off his shirt and challenge the Sacramento subject to fight. The Sacramento subject backed westbound through the parking lot toward the Dollar Tree store. Rodriguez heard somebody state, quote 'he's got a gun' end quote. Rodriguez looked to see the Sacramento subject walking backwards westbound in the lot with a silver handgun in his right hand. The male was pointing the gun toward the crowd of subjects and the male with no shirt. . . . Rodriguez saw the subject raise the gun into the air and fire one round.

RT 289.

The defense presented the following evidence at trial.

Rodney Drumm ("Drumm") testified that he received a call from his then-girlfriend on the night of the shooting. RT 629. He occasionally worked as a bouncer at Big John's Bar and Grill but was not working that night. RT 629–30. Within approximately five minutes of arriving, he went outside "because there was some sort of a disturbance going on outside." RT 630. Drumm testified that he saw a few people gather around one another like they were going to have a street fight. RT 630. He witnessed the group move towards a pickup truck and "all of a sudden a couple guns came out and bullets started flying." RT 630. Drumm recalls seeing people congregating towards what he thought was a silver Ford F-150, and then he saw a couple guys around the truck pull out guns. RT 633. Drumm does not recall seeing a guy near the driver's side of the truck shoot a gun into the air. RT 633. Clinkenbeard was called to read his report with regard to Drumm. RT 644. According to Clinkenbeard's report, Drumm went outside and "saw a small skinny little white guy with his shirt off taunting, throwing up – throwing his arms up, yelling and cussing at a couple of Mexican guys." RT 645. His report further states that "Drumm said the Mexican guys would take a couple steps back and then hold their ground as the

guy with the shirt off moved forward." RT 645. The report indicates that Drumm observed the men who went to a silver Ford pickup truck yelling at two other Mexican men by the shirtless man to get over to the truck so they could leave. RT 645–46. The man without his shirt on was about ten feet from the rear door of the truck, and the man standing at the back door on the driver's side was the first person Drumm saw pull out a gun and fire two or three rounds in the air. RT 646. After that, Drumm said he saw the man standing about ten feet east of the back of the truck pull a handgun out and start shooting at the driver's side of the truck. RT 646.

Alana Hinojosa ("Hinojosa"), petitioner's girlfriend, next testified on behalf of the defense as follows. While Hinojosa was outside with petitioner, Baca came close to them and "tried to swing on" petitioner. RT 659–60, 676. Hinojosa and petitioner tried to run and get away from everybody and back to the truck. RT 660–61. Hinojosa testified that she had previously seen a gun in the possession of Ybarra, who was one of the men near them when they got to the truck. RT 662–64, 694–95. According to Hinojosa, Ybarra showed her a gun right outside the bar when the argument first started.[3] RT 695. Hinojosa recalls telling the men approaching her and petitioner that petitioner was her baby's daddy and they should not "rush" him. RT 678. The main group of men, including Baca, came to the tail end of the truck. RT 681–82. Ybarra did not get too close to them and was near the driver's side of the car at the headlight. RT 682–83. Petitioner then fired a shot in the air. RT 683. When asked who shot first, Hinojosa testified that petitioner "had initially shot up in the air to get everybody back[.]" RT 685. Hinojosa testified that petitioner shot his gun "[o]nce initially and then like twice after that until we got into the car" after which the other men started shooting at the car. RT 698.

As to jury instructions, petitioner did not object to any portion of CALCRIM 3471, nor did he move to include the optional bracketed language regarding the use of only non-deadly force.[4] RT 746. During closing argument, petitioner's counsel argued that he shot at least one

---

[3] There was no evidence presented that petitioner saw the gun Hinojosa claims Ybarra showed her, or knew Ybarra had a gun in his possession. Further, Hinojosa admitted during cross examination that she did not share this information with the detective who interviewed her on March 1, 2012. RT 695.

[4] CALCRIM 3471 instructs a jury on a person's right to self-defense. The optional bracketed language at issue here reads: "However, if the defendant used only non-deadly force, and the

4

shot in the air as one of his only options to retreat from the confrontation. RT 819–20.
Petitioner's counsel further argued during closing,

> [W]hat we have is my client communicating by walking backwards, by saying back off which was heard by other people, by having his girlfriend intervene, by him again walking backwards and getting to the truck and firing a shot in the air communicating in a most effective way, other than writing these people, an act of Congress that I don't want to be involved in this. I don't want to be involved in a shooting, I don't want to be involved in your fight, I don't want to be mixed up with you guys, I want to get out of here.

RT 823.

### B. Post-Trial Proceedings

On April 3, 2014, after the jury rendered its verdict, petitioner filed a motion for new trial arguing in part that he was entitled to a new trial "on the ground that the jury instructions regarding self-defense were deficient in that such jury instructions failed to properly instruct the jury that [petitioner], who initiated the quarrel could still act in self-defense if the others' attack is so sudden and perilous that he cannot withdraw and cannot state to them that he wants to terminate the quarrel." CT 349;[5] see generally CT 349–85. Petitioner relied in part on People v. Quach, 116 Cal. App. 4th 294 (2004), and argued during the hearing on the motion that CALCRIM 3471 is a sua sponte jury instruction that obligates the court to give the bracketed instruction if there is evidence of self-defense. See generally id.; RT 897–900. Petitioner contended that the optional bracketed instruction should have been given, which would have provided the jury with the correct legal standard. RT 897–900. In opposition, the prosecution argued in part that there is no sua sponte duty to address or give the bracketed portion, and it should in fact only be given if the defendant started the fight using non-deadly force. RT 902; see also CT 394–404. The trial court ultimately found that "there is not substantial evidence supporting the giving of the bracketed material." RT 906.

---

opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend (himself/herself) with deadly force and was not required to try to stop fighting(,/ or) communicate the desire to stop to the opponent[, or give the opponent a chance to stop fighting].]
[5] "CT" refers to Clerk's Transcript on Appeal.

C. Post-Conviction Proceedings

On August 1, 2014, petitioner filed a timely appeal with the California Court of Appeal, Third Appellate District. Lodged Doc. 1. Petitioner contended, among other things, that (1) the trial court erred and violated petitioner's constitutional rights by failing to instruct the jury that a person engaged in mutual combat or who had started a fight, and has used only non-deadly force, has a right of self-defense, and (2) petitioner was denied his right to the effective assistance of counsel when his attorney failed to request the specific self-defense instruction. Id. Regarding the first point, petitioner argued that "it appeared that there was going to be a fistfight between [petitioner] and Baca. However, instead of fighting, [petitioner] walked or jogged backwards towards his truck, and on the way, he produced a handgun and fired one or two shots into the air." Id. at 20. Petitioner argued that "although [petitioner] may have started the fight or become involved in a mutual combat type situation, he had only used non-deadly force." Id.

On April 20, 2016, the California Court of Appeal affirmed petitioner's conviction. The court ruled that the instruction regarding an original aggressor's simple assault being met with deadly force from the victim is a special theory on which the trial court had no duty to instruct in the absence of a request. The court rejected petitioner's ineffective assistance of counsel claim for lack of prejudice. Lodged Doc. 6.

On May 24, 2016, petitioner sought review in the California Supreme Court on the question of the trial court's sua sponte duty to instruct the jury on petitioner's theory of self-defense. Lodged Doc. 9. On August 10, 2016, the California Supreme Court summarily denied review. Lodged Doc. 12.

On November 7, 2016, petitioner filed a petition for habeas corpus in this court. ECF No. 1. On April 10, 2017, respondent answered. ECF No. 20. Petitioner did not file a traverse.

II. STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be

> granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 99 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether . . . the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407–08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520–21 (2003).

////

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 562 U.S. at 101.

### III. DISCUSSION

#### A. Claim One: Jury Instructions Regarding Self-Defense

##### 1. Petitioner's Allegations

Petitioner's jury was instructed with CALCRIM 3470 and CALCRIM 3471, and the trial court failed to provide the first bracketed portion of the standard version of CALCRIM 3471, which would have helped his self-defense argument.[6] ECF No. 1 at 4. Petitioner argues that the trial court had a sua sponte duty to instruct the jury as to any theories or defenses that apply, including his theory of self-defense. Id.; see also id. at 7–13. Petitioner contends that "[t]he evidence . . . indicated that instead of fighting, petitioner walked or jogged backwards towards his truck, and on the way, he produced a handgun and fired one or two shots into the air . . . ." Id. at 9. Regarding CALCRIM 3471, petitioner argues that his rights were violated by the trial court's failure to include additional optional language that provides: "if the defendant used only non-deadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend (himself/herself) with deadly force and was not required to try to stop fighting(,/ or) communicate the desire to

---

[6] As set forth more fully below, CALCRIM 3470 addresses self-defense generally, and CALCRIM 3471 addresses self-defense in the context of mutual combat.

8

stop to the opponent[, or give the opponent a chance to stop fighting].]"

### 2. The Clearly Established Federal Law

Claims of error in state jury instructions are generally matters of state law, and thus may not be considered on federal habeas review. See Gilmore v. Taylor, 508 U.S. 333, 343–44 (1993). Federal habeas relief is available only when a petitioner demonstrates that a trial court's instructional error violated due process. Estelle v. McGuire, 502 U.S. 62, 71–72 (1991); see also Waddington v. Sarausad, 555 U.S. 179, 190–91 (2009) (same) (citations omitted). The United States Supreme Court explained in Henderson v. Kibbe that a petitioner challenging the failure to give an instruction faces an "especially heavy" burden. 431 U.S. 145, 155 (1977); see also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (noting that it is the "rare case" in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court (quoting Henderson, 431 U.S. at 155)). Courts essentially must determine "whether, under the instructions as a whole and given the evidence in the case, the failure to give the [omitted] instruction rendered the trial so fundamentally unfair as to violate federal due process." Duckett v. Godinez, 67 F.3d 734, 746 (9th Cir. 1995) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)); see Waddington, 555 U.S. at 191 (a challenged instruction must be evaluated in the context of other instructions and the trial record as a whole, not in artificial isolation (citations omitted)).

Even if omission of a particular instruction was constitutionally erroneous, federal habeas relief is not available for such a trial-type error unless the error had a substantial and injurious effect or influence in determining the jury's verdict. See Brecht v. Abrahamson, 507 U.S. 619, 622 (1993) (quotations omitted); see also Hedgpeth v. Pulido, 555 U.S. 57, 61–62 (2008) (per curiam) (applying Brecht prejudice standard to habeas claims of instructional error).

### 3. The State Court's Ruling

Petitioner raised his jury instruction claim on direct appeal. Because the California Supreme Court denied petitioner's appeal without comment, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034

(9th Cir. 2012). The California Court of Appeal ruled as follows:

> The trial court instructed the jury using CALCRIM No. 3470 that defendant had a right to self-defense if he reasonably believed he was in imminent danger of suffering bodily injury, if he reasonably believed that the immediate use of force was necessary to defend himself, and if he used no more force than was reasonably necessary to defend against that danger.
>
> CALCRIM No. 3471, as given to the jury in this case, provides: "A person who engages in mutual combat or who starts a fight has a right to self-defense only if: [¶] 1. He actually and in good faith tried to stop fighting; [¶] AND [¶] 2. He indicated by word or by conduct, to his opponent, in a way that a reasonable person would understand, that he wanted to stop fighting and that he had stopped fighting; [¶] If the defendant meets these requirements, he then had a right to self-defense if the opponent continued to fight."
>
> Defendant did not object to this instruction at trial. The only error asserted by defendant is that the first part of one of the optional bracketed portions of CALCRIM No. 3471 should also have been provided: "However, if the defendant used only non-deadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend (himself/herself) with deadly force." This bracketed portion continues, "and was not required to try to stop fighting (,/or) communicate the desire to stop to the opponent[, or give the opponent a chance to stop fighting]." Defendant did not request that the trial court give any part of the bracketed portion of the instruction.
>
> []
>
> Defendant contends the trial court had a sua sponte duty to instruct the jury with the bracketed instruction. We disagree. " 'Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' [Citation.]" (People v. Guiuan (1998( 18 Cal.4th 558, 570.) Nonetheless, "[a] court must instruct sua sponte on general principles of law that are closely and openly connected with the facts presented at trial." (People v. Ervin (2000) 22 Cal.4th 48, 90.) In particular, the trial court must include sua sponte instructions " 'on particular defenses and their relevance to the charged offense . . . if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " (People v. Wickersham (1982) 32 Cal.3d 307, 326, disapproved on another ground in People v. Barton (1995) 12 Cal.4th 186, 200-201.) But this duty is limited: "The judge is required to instruct only on general principles that are necessary for the jury's understanding of the case; the judge need not instruct, without request, on specific points or special theories that might be applicable to the particular case." (5 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Criminal Trial, § 677, p. 1044; see

People v. Garvin (2003) 110 Cal.App.4th 484, 489.) This rule applies to the situation at issue here. (See People v. Miceli (1951) 101 Cal.App.2d 643, 648-649 [trial court has no sua sponte duty to provide instruction on "sudden and perilous" counter assault; "[t]he jury having been properly instructed on the law of self-defense, in the language of the code, the defendant should have proposed any amplification desired in a form that could be given"].) Additionally, "the trial court cannot be required to anticipate every possible theory that may fit the facts of the case before it and instruct the jury accordingly. The judge need not fill in every time a litigant or his counsel fails to discover an abstruse but possible theory of the facts." (People v. Wade (1959) 53 Cal.2d 322, 334, disapproved on another point in People v. Carpenter (1997) 15 Cal.4th 312, 381-382.)

Defendant's reliance on People v. Quach (2004) 116 Cal.App.4th 294 (Quach) is misplaced. Quach concerned possible mutual combat between rival gang members. (Id. at pp. 297-298, 300-301.) None of the eye witnesses stated that Quach was the first to draw his gun. (Id. at pp. 297-298.) The court instructed the jury with CALJIC No. 5.56 before it was amended to include optional language similar to the optional language in CALCRIM No. 3471. (Id. at p. 300, fn. 2.) The appellate court concluded that, given that they were "certainly the facts Quach argued," (id. at p. 302) the trial court should have instructed the jury on his right as an original aggressor to use self-defense in the face of a sudden and perilous counter assault by the victim without first needing to stop fighting or communicate a desire to stop fighting, "which would have helped the jury arrive at a verdict if they accepted that version of the facts." (Id. at pp. 301, 302.) The court noted that the holdings that the bracketed instruction are based on "represent that exquisitely rare, tiny—but occasionally (very occasionally; once every 20 years) material[]—part of the law which was omitted from the instruction." (Id. at p. 302.)

This is not one of those cases. Defendant did not argue a self-defense theory based on an initial aggressor's right to respond to a sudden and perilous counter assault without needing to first withdraw or communicate a desire to withdraw from a fight. In fact, defense counsel argued to the jury that his client was not an initial aggressor at all: "Now, when we talk about initial aggressors such that you don't get to use self-defense, that's a person who lands a punch, who hits somebody, stabs somebody, shoots somebody and then tries to back off and claims self-defense. Words are not supposed to be a justification for attacking anybody at any time. Words are not a justification for that. You can call people anything you want. Words are not supposed to do that, and you cannot be called the initial aggressor because of the use of words." Further, defense counsel argued that his client never actually fought and communicated that he did not want to fight such that the bracketed portion of CALCRIM No. 3471 would have been unnecessary: "[W]hat we have is my client communicating by walking backwards, by saying back off which was heard by other people, by having his girlfriend intervene, by him again walking backwards and getting to the truck and firing a shot in the air

11

> communicating in a most effective way, other than writing these people, an act of Congress that I don't want to be involved in this. I don't want to be involved in a shooting, I don't want to be involved in your fight, I don't want to be mixed up with you guys, I want to get out of here."
>
> Accordingly, defendant's theory that he was an initial aggressor entitled to self-defense because he was faced with sudden and perilous counter assault " 'was not one that the evidence would strongly illuminate and place before the trial court.' " (People v. Davis (2005) 36 Cal.4th 510, 570, quoting People v. Wade, supra, 53 Cal.2d at p. 335.) Even now, defendant seems uncertain how to argue that the facts viewed in the light most favorable to him would justify the instruction he asserts the trial court had a sua sponte duty to give. Defendant claims, with no citation to the record, that "there was substantial evidence that appellant had *started the fight* with Baca and his group *or* become engaged in a mutual combat type situation, but used only non-deadly force, and that Ybarra *and/or* Baca responded with . . . sudden and deadly force." (Italics added) But he also contends that "instead of fighting," he went to his truck and, on the way, fired one or two shots into the air. There appears to be no evidence, let alone substantial evidence, that defendant committed a simple assault that is a necessary predicate for the bracketed instruction. (People v. Hecker (1895) 109 Cal. 451, 464; 1 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Defenses, § 80, p. 522.) Assault with a firearm is not a simple assault. (See Williams v. Superior Court (2001) 92 Cal.App.4th 612, 615, fn.2 ["A violation of section 240 . . . is a simple assault. The additional element of 'use of force likely to create great bodily injury' under section 245, subdivision (a)(1) defines the felony of aggravated assault"].) And defendant offers no other facts to suggest he was an initial aggressor or committed a simple assault. In this situation, we conclude the instruction regarding an original aggressor's simple assault being met by deadly force from the victim is a special theory on which the trial court had no duty to instruct in the absence of a request.
>
> There was no instructional error.

Lodged Doc. 6 at 7–11.

### 4. Objective Reasonableness Under § 2254(d)

Assuming that petitioner presents a federal claim here, it lacks merit. As the Court of Appeal explained, petitioner acknowledged that he shot one or two shots from his gun into the air before his opponent(s) fired at him. Witnesses called by both the prosecution and the defense attested to this series of events. The Court of Appeal also correctly pointed out that "[a]ssault with a firearm is not a simple assault." Lodged Doc. 6 at 11 (citations omitted). In other words, petitioner did not use only non-deadly force, which is a necessary predicate for the bracketed

12

instruction. It follows that the trial court did not err, or violated due process, in excluding that portion from the jury instruction.

Moreover, a presumption of correctness applies to the California Court of Appeal's finding that the evidence did not support the bracketed portion of CALCRIM 3471. See Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005) (state trial court's finding that evidence did not support an instruction is entitled to presumption of correctness). Petitioner has not rebutted this presumption. To the contrary, the evidence at trial was more than sufficient to support the omission of the bracketed portion of CALCRIM 3471. Petitioner's argument that his opponent(s) shot at him after he fired warning shots in the air does not change this analysis. What matters here is whether petitioner used only non-deadly force *before* his opponent(s) used sudden and deadly force. He did not. The evidence shows, and petitioner agrees, that he brandished a firearm and fired one or two shots in the air before petitioner's opponent(s) fired any shots. Because this is not considered non-deadly force, the bracketed instruction was not applicable. See Hopper v. Evans, 456 U.S. 605, 611 (1982) (explaining that due process requires that an instruction "be given *only* when the evidence warrants such an instruction"). Thus, "there was no error and . . . [petitioner's] due process rights were not violated." Menendez, 422 F.3d at 1029.

For the same reasons, it is not reasonably likely that petitioner would have obtained a better outcome if the jury had heard the bracketed instruction. Given the evidence in this case— including that petitioner fired his gun in the air at least once before his opponent(s) shot at him— the failure to give the bracketed instruction did not render the trial so fundamentally unfair as to violate federal due process. Duckett, 67 F.3d at 746 (no due process violation to reject a proposed instruction where the instructions as a whole adequately covered the defense theory).

### B. Claim Two: Ineffective Assistance of Counsel

#### 1. Petitioner's Allegations

Petitioner's attorney did not object to the CALCRIM 3471 instruction the court gave to the jury. ECF No. 1 at 4; see also id. at 13–18. Petitioner argues that "the failure to request an instruction explaining that if [petitioner] used only non-deadly force, and his opponent or opponents responded with such sudden and deadly force that [petitioner] could not withdraw from

13

the fight, then appellant had a right to defend himself with deadly force, or to object to the given version of CALCRIM No. 3471, fell below the standard of conduct expected of a reasonably competent criminal trial attorney, and there could be no tactical reason for such conduct." Id. at 14.

### 2. The Clearly Established Federal Law

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an adverse effect on the defense. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693–94. The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong. Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

### 3. The State Court's Ruling

Petitioner did not seek California Supreme Court review of his ineffective assistance of counsel claim. See Lodged Doc. 9. Therefore, petitioner has not exhausted this claim. See 28 U.S.C. § 2254(b); Picard v. Connor, 404 U.S. 270, 276 (1971). Because an unexhausted claim may be denied on the merits, § 2254(b)(2), the court exercises its discretion to bypass the issue.

The court reviews the unexhausted claim de novo, because a claim that fails under de novo review would necessarily fail under AEDPA's deferential standard of review. See Berghuis v. Tompkins, 560 U.S. 370, 390 (2010) (explaining that courts can "deny writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review.") (citation omitted).

Even engaging in de novo review, however, the undersigned finds that the Court of Appeal's decision is plainly correct. See, e.g., Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc) (noting that even on de novo review a court must focus on the state court's reasoning to

14

determine whether a constitutional violation occurred). The Court of Appeal ruled as follows:

> Alternatively, defendant contends that his trial counsel's failure to request the optional bracketed instruction was ineffective assistance of counsel. We disagree. "A defendant claiming ineffective assistance of counsel under the federal or state Constitution must show both deficient performance under an objective standard of professional reasonableness and prejudice under a test of reasonable probability of a different outcome." (People v. Ochoa (1998) 19 Cal.4th 353, 414; see Strickland v. Washington (1984) 466 U.S. 668, 687-696 [104 S.Ct. 2052, 80 L.Ed.2d 674], superseded by statute on other grounds.) Defendant's claim fails under both prongs. Again defendant fails to cite any evidence for his assertion that "the evidence indicated that appellant had started the fight with Baca and his group or become engaged in a mutual combat type situation, but had used only non-deadly force, and that Ybarra and/or Bacca responded so suddenly with deadly force by shooting at appellant that he did not have time to withdraw from the fight, thereby giving appellant a right of self-defense." If the most favorable version of the facts for defendant is credited, then, as his counsel argued at trial, he was not the original aggressor, and the entire instruction would not apply—particularly the need to excuse a failure to withdraw from a fight he did not participate in. Failing to request an optional instruction that is both unnecessary and that conflicts with defendant's theory of the case can hardly be considered unreasonable. For similar reasons, any request to include an unnecessary instruction would not have created a reasonable probability of a different outcome. Additionally, as the trial court correctly noted in denying a motion for new trial made based on the omission of the optional bracketed instruction, the facts did not support giving the instruction. There is no reason to believe the same request made during trial would have been resolved differently. As we have explained previously, there appears to be no evidence, let alone substantial evidence, that defendant committed a simple assault that is a necessary predicate for the bracketed instruction. Defendant's ineffective assistance of counsel claim fails because he cannot establish that his trial counsel was deficient under an objective standard of professional reasonableness or that without the alleged deficiency a different outcome was reasonably probable.

Lodged Doc. 6 at 11–12.

### 4. Merits of Claim Two and Objective Reasonableness Under § 2254(d)

Petitioner has not established "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Petitioner's trial counsel did not request the optional bracketed language in CALCRIM 3471 during trial. However, it is not likely that the outcome of the trial would have been different had the additional instruction been requested and provided. This is because, as

discussed above, the bracketed instruction requires that petitioner used "only non-deadly force" before his opponent(s) responded with deadly force. However, the evidence presented at trial by both parties established that petitioner fired his gun in the air at least once before his opponent(s) fired a gun at him. Based on this evidence, petitioner used more than non-deadly force before his opponents responded with sudden and deadly force. It is therefore very unlikely that the omitted bracketed instruction would have had an impact on the jury or affected the verdict. Accordingly, petitioner's ineffective assistance claim fails.

## CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Even without reference to AEDPA standards, petitioner has not established any violation of his constitutional rights. Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 13, 2019

_allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

16